IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **LUIS F. GONZALEZ-COLON**, <br><br>    Petitioner <br><br> v. <br><br> **ESTADO LIBRE ASOCIADO DE PUERTO RICO**, *et al.*, <br><br>    Respondents. | Civil No. 15-1560 (PAD/BJM) |

## REPORT AND RECOMMENDATION

Luis F. Gonzalez-Colon ("Gonzalez") petitions for a writ of habeas corpus under 28 U.S.C. § 2254 following his convictions in the Commonwealth of Puerto Rico (the "Commonwealth") for the illegal practice of psychology, P.R. Laws Ann. tit. 20, § 3221 ("Law 96"), and illegal appropriation. P.R. Laws Ann. tit. 33, § 4821. Gonzalez, who is a licensed professional counselor, contends that Law 96—on its face—violates the First Amendment, and that Law 96 was applied in violation of the First Amendment under the circumstances of his case. Docket No. 63. The Commonwealth moved to dismiss the petition for failure to exhaust all available state court procedures, Docket Nos. 39, 71, and Gonzalez opposed. Docket Nos. 42, 72. This matter, as well as the entire case, was referred to me for a report and recommendation. Docket Nos. 61, 62, 73.

For the reasons set forth below, the motion to dismiss should be **DENIED**.

## BACKGROUND

In April 2008, Gonzalez, who is a licensed professional counselor ("LPC"), charged $4,000 to prepare an "expert psychological report" for Edwin Paez ("Paez") and Dimaris Rodriguez that would be used in a custody battle over the couple's minor son. Docket No. 59-6 at 3–4. Unsatisfied with the report prepared by Gonzalez, Paez complained to the Puerto Rico Psychological Association (the "Association") and the Puerto Rico Board of Examiners of Psychologists ("Board of Examiners"). *Id.* at 4, 6. The Board of Examiners

informed Paez that Gonzalez was not a licensed psychologist, and referred the matter to the Puerto Rico Department of Justice. *Id.* at 6. Gonzalez was charged with the illegal practice of psychology and third-degree illegal appropriation. Docket No. 63 ¶ 4.

Gonzalez pled not guilty to both charges, was tried before a jury, and was found guilty of the crimes charged. *Id.* ¶ 5. After the guilty verdict, Gonzalez filed a motion with the Puerto Rico Court of First Instance (the "trial court") in which he requested that the trial court "arrest" the judgment and dismiss the charges. Docket No. 59-1. In the portion of the motion discussing the "applicable law," Gonzalez started the discussion with a section titled "FEDERAL." Docket No. 59-1 at 3. In that section, Gonzalez argued that "two laws" (i.e., Law 96 and the law governing LPCs) were "constantly clashing," that his case presented a "novel controversy," and that the case required consideration of the law of the "United States." *Id.*

In the next paragraph of Gonzalez's motion, he specifically referenced "the First Amendment to the Constitution of the United States," and stated that this constitutional amendment protects "commercial speech." *Id.* Gonzalez then cited two cases where federal courts held that commercial speech rights were being impermissibly curtailed. *Id.* at 3–4 (citing *Peel v. Att'y Registration & Disciplinary Comm'n of Ill.,* 496 U.S. 91(1990) and *G.W. Eckles v. Oregon State Bd. of Psychologist Examiners*, *et. al.*, Civil. No. 92-945, Docket No. 113 (D. Or. Aug. 17, 1994), *available at* Docket No. 2-9 at 2–19).

Gonzalez went further: he attached *G.W. Eckles* as "Appendix I" and analogized the circumstances of his case to *G.W. Eckles*, a case where a federal district court considered a facial- and as-applied challenge to an Oregon statute governing psychologists. *See G.W. Eckles*, *supra*, at 18. While the *G.W. Eckles* court declined to hold that the Oregon statute violated the First Amendment on its face, the court held that the statute was unconstitutional as applied to the plaintiff—an individual who, like Gonzalez, held a Master of Arts degree in psychology but was not licensed to practice as a psychologist by the state board of examiners. *See G.W. Eckles*, *supra*, at 18.

Gonzalez's trial court motion then described the functions performed by an LPC in various jurisdictions before discussing Law 96 and the functions an LPC is authorized to perform under Puerto Rico law. Docket No. 59-1 at 4–13. Gonzalez alleges that the trial court did not hold a hearing to entertain this motion. Docket No. 63 ¶ 11. Rather, in September 2013, the trial court sentenced Gonzalez to four years imprisonment.[1] In March 2014, Gonzalez submitted his appeal brief to the Puerto Rico Court of Appeals. Docket No. 59-5. In that appeal brief, Gonzalez asserted that four errors were made in the proceedings before the trial court. *Id.* at 2–3.

The "fourth error made"—Gonzalez contended—concerned "an error of law." *Id.* at 2. The discussion that followed immediately thereafter largely mirrored Gonzalez's argument before the trial court. *Compare* Docket No. 59-1 at 3–6, *with* Docket No. 59-5 at 2–9. For example, in his appeal brief Gonzalez claimed that his case presented a "new controversy," asserted a right to "commercial speech," and cited the First Amendment to the U.S. Constitution, *G.W. Eckles*, and *Peel*. Docket No. 59-5 at 3–4. In June 2014, the Puerto Rico Court of Appeals affirmed Gonzalez's convictions. Docket No. 59-6.

The reviewing court's decision did not discuss the First Amendment or address whether this constitutional amendment barred or affected the convictions rendered in the proceedings below. *See id.* Rather, the reviewing court read the appeal brief as challenging only the "sufficien[cy]" of the evidence that "support[ed] [the] guilty verdicts."[2] *Id.* at 1; *see also id.* at 18 ("*All* of the arguments submitted by the appellant state the insufficiency of the evidence to support the ruling under which Mr. Gonzalez was found guilty.") (emphasis added). Gonzalez asked the Puerto Rico Court of Appeals to reconsider its decision and made reference to "the 'legal' issues that existed between both professions." Docket No. 59-7 at 3. The reviewing court declined to reconsider its decision, and so

---

[1] The trial court suspended Gonzalez's prison sentence, and Gonzalez has been under the supervision of the Puerto Rico Bureau of Prisons since 2013. Docket Nos. 42 at 2, 42-1.

[2] The first two errors Gonzalez underscored in his appeal brief indeed concerned the sufficiency of the evidence. *See* Docket No. 59-5 at 2.

Gonzalez petitioned for a writ of certiorari from the Puerto Rico Supreme Court. Docket No. 59-8.

In his appeal brief to Puerto Rico's high court, Gonzalez reduced the assignment of errors from four to three. *Id.* at 2–2. But Gonzalez held fast to his First Amendment argument, asserting that it was the "third error" made in the proceedings below. *Id.* at 3. Gonzalez's appeal brief to the Puerto Rico Supreme Court included a discussion quite similar to the one in his brief to the Puerto Rico Court of Appeals, and cited the First Amendment to the U.S. Constitution, *G.W. Eckles*, and *Peel*. *Id.* at 3–5. In December 2014, the Puerto Rico Supreme Court denied the request for certiorari. Docket No. 2-1 at 2.

Appearing pro se, Gonzalez asked Puerto Rico's high court to reconsider. Docket No. 59-9. Gonzalez captioned the motion to reconsider as follows: "Novel Issues Regarding Mental Health in Puerto Rico, Counseling Profession, Psychology Profession . . . ." *Id.* at 1. He later reasserted that his case presented a "novel issue," and that he had been convicted in violation of the "laws and the Constitution of the United States of America." Docket No. 59-9 ¶¶ 3, 7. The Puerto Rico Supreme Court denied Gonzalez's motion to reconsider in April 2015, Docket No. 2-2, and Gonzalez petitioned for a writ of habeas corpus in this court the following month. Docket No. 1.

### DISCUSSION[3]

Gonzalez contends that the court should "consider this case on its merits" because he adequately apprised the Puerto Rico courts of his First Amendment arguments. Docket No. 72 at 1. The Commonwealth maintains that the petition should be dismissed because Gonzalez "buried" his First Amendment arguments. Docket No. 71 ¶ 33.

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, a habeas petitioner generally must exhaust the remedies available in the state court "before seeking relief on a given claim in federal court." *Jaynes v. Mitchell*, 824

---

[3] This discussion is only meant to address the exhaustion issue presently before the court, and I express no view whatsoever on the merits of Gonzalez's petition at this particular juncture.

F.3d 187, 192 (1st Cir. 2016). This requirement is based on the principle "that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act." *Coningford v. Rhode Island*, 640 F.3d 478, 482 (1st Cir. 2011) (quoting *Rose v. Lundy*, 455 U.S. 509, 515 (1982)).

"A claim based on federal law is not exhausted unless a petitioner has 'fairly and recognizably' presented it to the state courts." *Sanchez v. Roden*, 753 F.3d 279, 294 (1st Cir. 2014) (quoting *Casella v. Clemons*, 207 F.3d 18, 20 (1st Cir. 2000)). To do so, the "petitioner must have 'tendered his federal claim 'in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question.'" *Sanchez*, 753 F.3d at 294 (quoting *Casella*, 207 F.3d at 20). Put another way, "'the legal theory [articulated] in the state and federal courts must be the same.'" *Clements v. Maloney*, 485 F.3d 158, 162 (1st Cir. 2007) (alteration in original) (quoting *Gagne v. Fair*, 835 F.2d 6, 7 (1st Cir. 1987)).

A habeas petitioner may adequately tender his federal claim to the state courts "by doing any of the following: (1) citing a provision of the federal constitution; (2) presenting a federal constitutional claim in a manner that fairly alerts the state court to the federal nature of the claim; (3) citing federal constitutional precedents; or (4) claiming violation of a right specifically protected in the federal constitution." *Clements*, 485 F.3d at 162. And because the "law of exhaustion requires only that" a petitioner's "federal claims be first presented to the state courts so as to give them an opportunity to consider the constitutional issues," the petitioner "need not demonstrate that those courts either addressed or decided them." *Williams v. Holbrook*, 691 F.2d 3, 8 (1st Cir. 1982).

In this case, the court should find that Gonzalez tendered his federal claim in such a way as to make it probable that a reasonable jurist would have been alerted to the existence of the federal question. *See Sanchez*, 753 F.3d at 294. The court should find so because Gonzalez's briefs to the trial court, the Puerto Rico Court of Appeals, and the Puerto Rico Supreme Court advanced similar variants of the arguments he seeks to have

the court consider.[4] *See Sanchez*, 753 F.3d at 296 ("A litigant satisfies the fair presentment requirement by identifying a claim as federal in his or her brief to a state appellate court."). From the outset Gonzalez's trial brief made the Puerto Rico courts aware that he was advancing federal claims by titling a section of his brief "FEDERAL." *See Baldwin v. Reese*, 541 U.S. 27, 32 (2004) (petitioner can alert state courts to federal nature of his claim "by simply labeling the claim 'federal'"). And Gonzalez's briefs to the Puerto Rico courts cited the First Amendment to the U.S. Constitution; a U.S. Supreme Court case that identifies the First Amendment right to "commercial speech"; and a federal district court case holding that an Oregon statute governing psychologists was valid on its face, but enforced in violation of the First Amendment because it infringed on the plaintiff's constitutionally protected right to commercial speech.

In light of the above, Gonzalez employed at least three methods that are sufficient to alert the state courts to the federal nature of the claim. *See Clements*, 485 F.3d at 162. And this is so even though the Puerto Rico courts did not specifically address Gonzalez's First Amendment argument. *See Smith v. Digmon*, 434 U.S. 332, 333 (1978) ("It is too obvious to merit extended discussion that whether the exhaustion requirement . . . has been satisfied cannot turn upon whether a state appellate court chooses to ignore in its opinion a federal constitutional claim squarely raised in petitioner's brief in the state court"); *Williams*, 691 F.2d at 8 (petitioner "need not demonstrate that [the state] courts either addressed or decided the[]" petitioner's arguments). Thus, the court should find that Gonzalez exhausted all available state court procedures by presenting his First Amendment argument to the Puerto Rico state courts.

---

[4] Because Gonzalez presented his First Amendment argument at every stage on direct appeal—including his appeal to the Puerto Rico Supreme Court—he need not show that he sought collateral relief that might have been available in the Puerto Rico courts. *See Gunter v. Maloney*, 291 F.3d 74, 82 (1st Cir. 2002) ("Federal habeas review does not demand that a petitioner in every case ask the state for collateral relief where he has already fairly presented the claim and the evidence on direct appeal.") (citing *Brown v. Allen*, 344 U.S. 443, 447 (1953)).

To be sure, Gonzalez has sought to refine his First Amendment argument by subdividing this broad legal theory into two sub-arguments: (1) that Law 96 was applied in violation of the First Amendment under the circumstances of his case, and (2) that Law 96 violates the First Amendment on its face. Both grounds should be considered by the court for at least two reasons. First, it is well-settled that the "petitioner need not express his federal claims in precisely the same terms in both the state and federal courts." *Barresi v. Maloney*, 296 F.3d 48, 51–52 (1st Cir. 2002). Indeed, the First Circuit has held that a petitioner "is not precluded from some reformulation of the claims she made in the state courts, since exhaustion requires only that 'the substance of a federal habeas corpus claim must first be presented to the state courts.'" *Williams*, 691 F.3d at 6 (quoting *Picard v. Connor*, 404 U.S. 270, 278 (1971)). "Nor, for purposes of satisfying exhaustion, must petitioner adhere inflexibly to the legal theories and factual allegations recited to the state courts." *Williams*, 691 F.2d at 6.

The other reason is that Gonzalez's briefs to the Puerto Rico courts can fairly be read to encompass both an as-applied and facial challenge to Law 96. *See* Docket Nos. 59-1, 59-5, 59-8. Before and after referencing the First Amendment in his briefs to the Puerto Rico courts, Gonzalez stressed that Law 96 is in conflict with the Puerto Rico law governing LPCs, and that Law 96 effectively criminalized commercial speech expressed by LPCs while practicing their profession. This is the type of argument asserted when a litigant contends that a statute violates the First Amendment on its face. *See, e.g.*, *Speet v. Schuette*, 726 F.3d 867, 873 (6th Cir. 2013) ("A facial challenge based on substantial overbreadth 'describe[s] a challenge to a statute that in all its applications directly restricts protected First Amendment activity and does not employ means narrowly tailored to serve a compelling governmental interest.'") (quoting *Sec'y of State of Md. v. Joseph H. Munson Co., Inc.*, 467 U.S. 947, 966 n.13 (1984)).

And Gonzalez's briefs to the Puerto Rico courts also asserted that Law 96 was being unconstitutionally applied in his case because, according to him, the evidence at trial

showed that he did not overstep the bounds of what an LPC is authorized to do in Puerto Rico. *See, e.g., Speet*, 726 F.3d at 872 ("an as-applied challenge . . . argues that a law is unconstitutional as enforced against the plaintiffs before the court"). In this vein, for example, Gonzalez underscored the testimony of Dr. Alberto Salas Roman, President of the Puerto Rico Examining Board of Professional Licensed Counselors, who opined that Gonzalez had not acted outside the bounds of his profession. Docket No. 59-5 at 10. Thus, because the court should find that Gonzalez adequately tendered his federal claim to the Puerto Rico state courts on direct appeal, the petition's merits should be considered and the motion to dismiss should be denied.

## CONCLUSION

For the foregoing reasons, the motion to dismiss should be **DENIED**.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**
In San Juan, Puerto Rico, this 15th day of December 2016.

*S/ Bruce J. McGiverin*
BRUCE J. MCGIVERIN
United States Magistrate Judge