IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

**LUIS F. GONZALEZ-COLON**,
    Petitioner,

v.

**ESTADO LIBRE ASOCIADO DE PUERTO RICO** *et al.*,
    Respondents.

Civil No. 15-2402 (PAD/BJM)

## REPORT AND RECOMMENDATION

Luis F. Gonzalez-Colon ("Gonzalez") petitions for a writ of habeas corpus under 28 U.S.C. § 2254 following his convictions in the Commonwealth of Puerto Rico (the "Commonwealth") for the illegal practice of psychology, P.R. Laws Ann. tit. 20, § 3221 ("Law 96"), and illegal appropriation. P.R. Laws Ann. tit. 33, § 4821. Gonzalez contends that Law 96 was applied to him in violation of the First Amendment and is facially void for vagueness under the Due Process Clause of the Fifth Amendment. Docket No. 63. Gonzalez moved for summary judgment, Docket Nos. 85–87, and the Commonwealth opposed. Docket No. 120. The Commonwealth also moved for summary judgment. Docket No. 120. This case was referred to me for a report and recommendation. Docket Nos. 61, 62.

For the reasons set forth below, the Commonwealth's motion for summary judgment should be **GRANTED**.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the movant shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" only if it "is one that could be resolved in favor of either party." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004). A fact is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions" of the record materials "which it

believes demonstrate the absence" of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

The court does not act as trier of fact when reviewing the parties' submissions and so cannot "superimpose [its] own ideas of probability and likelihood (no matter how reasonable those ideas may be) upon" conflicting evidence. *Greenburg v. P.R. Mar. Shipping Auth.*, 835 F.2d 932, 936 (1st Cir. 1987). Rather, it must "view the entire record in the light most hospitable to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Griggs-Ryan v. Smith*, 904 F.2d 112, 115 (1st Cir. 1990). The court may not grant summary judgment "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. But the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), and may not rest upon "conclusory allegations, improbable inferences, and unsupported speculation." *Medina-Muñoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

## BACKGROUND

Except where otherwise noted, the following facts are drawn from the parties' submissions under Local Rule 56[1]: Gonzalez's Statement of Facts ("SUF"), Docket No. 87, and the Commonwealth's Reply Statement of Facts ("RSF"), Docket No. 120-1. In 2008, Edwin Páez ("Páez") was having custody issues with his minor son and began looking for a forensic

---

[1] Local Rule 56 is designed to "relieve the district court of any responsibility to ferret through the record to discern whether any material fact is genuinely in dispute." *CMI Capital Market Inv. v. Gonzalez-Toro*, 520 F.3d 58, 62 (1st Cir. 2008). It requires a party moving for summary judgment to accompany its motion with a brief statement of facts, set forth in numbered paragraphs and supported by citations to the record, that the movant contends are uncontested and material. D.P.R. Civ. R. 56(b), (e). The opposing party must admit, deny, or qualify those facts, with record support, paragraph by paragraph. *Id.* 56(c), (e). The opposing party may also present, in a separate section, additional facts, set forth in separate numbered paragraphs. *Id.* 56(c). While the "district court may forgive a party's violation of a local rule," litigants ignore the Local Rule "at their peril." *Mariani-Colón v. Dep't of Homeland Sec. ex rel. Chertoff*, 511 F.3d 216, 219 (1st Cir. 2007). As the Commonwealth did not file a separate statement of facts to accompany its motion for summary judgment, the court will apply the same facts to its motion for summary judgment as provided by Gonzalez.

Luis F. Gonzalez Colon v. Estado Libre Asociado de Puerto Rico *et al.*, Civil No. 15-1560 (PAD/BJM)  3

psychologist to complete a report. SUF ¶¶ 4, 8; RSF ¶ 4. Páez found Gonzalez through a half-page advertisement in a newspaper that stated that Gonzalez was a forensic psychologist; when Páez called Gonzalez, Gonzalez again stated that he was a forensic psychologist. SUF ¶ 6; RSF ¶ 6. Páez visited Gonzalez's office with his former wife and minor son where Gonzalez submitted them to a battery of psychological tests. SUF ¶ 7. These tests are mostly used by psychologists but may also be used by other professionals with adequate training. SUF ¶¶ 18–19, 34.

Páez paid Gonzalez a total of $4,000 for his services including the testing and a report. SUF ¶ 8. Gonzalez titled his report, "Psychological Expert Report, Applied Psychology Division Program for Early Intervention." SUF ¶ 9. On the last page of the report, Gonzalez listed his title as Clinical Psychological Counselor with license number 2294 along with several other titles. SUF ¶¶ 9, 27, 32; RSF ¶ 32.[2] At that time, the title of Clinical Psychological Counselor did not exist. RSF ¶ 27. License number 2294 belonged to someone else. Docket No. 59-6 ("Appellate Decision") at 8. Gonzalez gave Páez a business card at the same time that he handed him the report; printed on the business card is: Gonzalez's name, the acronyms "P.H.D." [sic] and "MCC," the words "Pitsa" and "counseling Phychology" [sic], Gonzalez's office address and phone numbers, and the listing, "evaluations for children, adolescents, and adults. Individual therapy depression anxiety psychological abuse labor, sexual addiction, conjugal abuse eating disorders and traumatology." SUF ¶ 13; RSF ¶ 13. Unsatisfied with the report prepared by Gonzalez, Páez found out that Gonzalez was not a psychologist at the Board of Psychologists. SUF ¶¶ 12, 14; RSF ¶ 14.

The Commonwealth charged Gonzalez with the illegal practice of psychology and third-degree illegal appropriation. SUF ¶ 1. Gonzalez pled not guilty to both charges, was tried before a jury, and was found guilty of the crimes charged. Docket No. 63 ¶ 4; SUF ¶ 5. During the trial, the government's witness, Dr. Medina, testified that "in three areas of [Gonzalez's] report it talked about the word psychological, sort of like giving the impression to a regular layperson that it was

---

[2] The Commonwealth's reply statement of facts states that the license number that Gonzalez provided was 2994 while the Puerto Rico Court of Appeals listed the license number as 2294. RSF ¶ 32; Appellate Decision at 8. This court will assume that the correct license number is 2294 as the discrepancy does not affect any analysis.

a psychologist who had conducted the evaluation… and in none of the titles [that Gonzalez listed for himself on the signature page] did it say professional counselor." SUF ¶¶ 25, 26; RSF ¶ 25; Docket No. 118-1 ("Trial Tr.") at 144. Dr. Medina also testified that a person may not call himself a psychologist if he doesn't have a license and that only psychologists may issue an expert psychological report because "we are the ones that issue that word." SUF ¶¶ 23, 28; RSF ¶ 23; Trial Tr. at 141–42, 161. Gonzalez's witness, Dr. Salas, testified that it is difficult to establish the difference between psychologists and professional counselors and explained that professional counselors may make diagnoses if they have the requisite knowledge. SUF ¶¶ 47, 49.

Gonzalez is a licensed professional counselor. SUF ¶ 16. He received his master's degree in psychology from Universidad del Turabo, a duly accredited university by the Puerto Rico Council of Higher Education and the Middle States Association of Colleges and Schools. SUF ¶¶ 16, 44. Under the law, the functions of a licensed professional counselor are similar to those of psychologists. SUF ¶ 20. Dr. Medina explained that a licensed professional counselor can work with some areas of psychopathology as long as the professional counselor does not refer to himself as a psychologist or a psychological counselor. SUF ¶ 30; RSF ¶ 30.

## DISCUSSION

Gonzalez's first challenge to his conviction is that the statute under which he was convicted, Law 96, is unconstitutional under First Amendment of the U.S. Constitution as it was applied to him. The First Amendment, which applies to the states through the Fourteenth Amendment, prohibits Congress from making any law "abridging the freedom of speech." U.S. Const. amend. I; *see Thayer v. City of Worcester*, 144 F. Supp. 3d 218, 232–33 (D. Mass. 2015). For the purposes of the First Amendment, Puerto Rico is considered to be the functional equivalent of a state. *See Perez-Guzman v. Gracia*, 346 F.3d 229, 232 n. 1 (1st Cir. 2003).

"It is too well settled to require discussion at this day that the police power of the states extends to the regulation of certain trades and callings, particularly those which closely concern the public health." *Watson v. State of Md.*, 218 U.S. 173, 176 (1910); *see Goldfarb v. Va. State Bar*, 421 U.S. 773, 792 (1975) ("States have a compelling interest in the practice of professions within

their boundaries, and that as part of their power to protect the public health, safety, and other valid interests they have broad power to establish standards for licensing practitioners and regulating the practice of professions."). Such police power extends to regulating public health professions including psychology. *See King v. Governor of N.J.*, 767 F.3d 216, 232 (3d Cir. 2014) ("This regulatory authority is particularly important when applied to professions related to mental and physical health."); *Nat'l Ass'n for Advancement of Psychoanalysis v. Cal. Bd. Of Psychology*, 228 F.3d 1043, 1052 (9th Cir. 2000) ("Regulating psychology . . . is within the state's police power to regulate mental health treatment."). As a consequence of this broad police power, states have a "broad power to establish standards for licensing practitioners and regulating the practice of professions." *Hines v. Alldredge*, 783 F.3d 197, 201 (5th Cir. 2015) (quoting *Gade v. Nat'l Solid Wastes Mgm't Ass'n,* 505 U.S. 88, 108 (1992)).

Within this framework, the parties disagree on how the court should analyze Puerto Rico's law regulating the profession of psychology, Law 96. The Commonwealth asserts that Law 96 should be considered a content and viewpoint neutral regulation that is subject to rational basis review under the professional speech doctrine. *See* Docket No. 120 at 17–21. Gonzalez, while acknowledging that the professional speech doctrine may apply, argues that Law 96 should be analyzed as a content-based restriction of commercial speech and thus subject to heightened scrutiny or, in the alternative, intermediate scrutiny. *See* Docket No. 86 at 9; 15–20. Both parties appear to agree that the regulation does not discriminate based on viewpoint. *See* Docket No. 120 at 19; *see generally* Docket No. 86. As discussed below, neither party fully developed its arguments regarding the professional speech doctrine as it applies to Law 96. However, as Law 96 is constitutional under the commercial speech doctrine, there is no need to determine whether it is also constitutional under the professional speech doctrine and rational basis review.

To address the apparent conflict between the states' police power to regulate and the First Amendment speech rights of professionals, five circuit courts have adopted the professional speech doctrine, based on Justice White's concurrence in *Lowe v. SEC,* 472 U.S. 181, 230–33 (1985). *See Young v. Ricketts*, 825 F.3d 487, 492–94 (8th Cir. 2016); *Hines*, 783 F.3d at 201; *Locke v. Shore*,

634 F.3d 1185, 1191 (11th Cir. 2011); *Nat'l Ass'n for Advancement of Psychoanalysis,* 228 F.3d at 1056; *Accountant's Soc. of Va. v. Bowman*, 860 F.2d 602, 603–04 (4th Cir. 1988). "Under the professional speech doctrine, the government can license and regulate those who would provide services to their clients for compensation without running afoul of the First Amendment." *Moore-King v. Cty. of Chesterfield, Va.*, 708 F.3d 560, 569 (4th Cir. 2013); *see Lowe*, 472 U.S. at 232 (White, J., concurring) ("If the government enacts generally applicable licensing provisions limiting the class of persons who may practice the profession, it cannot be said to have enacted a limitation on freedom of speech . . . subject to First Amendment scrutiny."). The First Circuit has not endorsed or rejected the doctrine although it has been clear that "[s]imply because speech occurs does not exempt those who practice a profession from state regulation (including the imposition of disciplinary sanctions." *Coggeshall v. Mass. Bd. of Reg. of Psychologists*, 604 F.3d 658, 667 (1st Cir. 2010) (citing *Ohralik v. Ohio State Bar Ass'n,* 436 U.S. 447, 456, 459 (1978); *Nat'l Ass'n for the Advancement of Psychoanalysis,* 228 F.3d at 1053–55).

As strong as a state's right to regulate professionals is, though, the professional speech doctrine has limits: "while a professional may speak on a variety of topics in a variety of contexts, only some of this speech" qualifies as professional speech such that it may be regulated without obstructing the First Amendment. *Serafine v. Branaman*, 810 F.3d 354, 359 (5th Cir. 2016). There is a critical distinction between regulating a professional's speech to a client as opposed to regulating a professional's speech to the public:

> Where the personal nexus between professional and client does not exist, and a speaker does not purport to be exercising judgment on behalf of any particular individual with whose circumstances he is directly acquainted, government regulation ceases to function as legitimate regulation of professional practice with only incidental impact on speech; it becomes regulation of speaking or publishing as such, subject to the First Amendment's command that 'Congress shall make no law ... abridging the freedom of speech, or of the press.'

*Lowe,* 472 U.S. at 232 (White, J., concurring); *see Serafine*, 810 F.3d at 360 (overturning conviction of an unlicensed psychologist who listed on her campaign website for Texas Senate that she was a lawyer and a psychologist). Therefore, determining the context in which the government

is regulating speech—specifically whether there is a personal nexus between the professional and his client—is a threshold question to the professional speech doctrine analysis. *See Moore-King*, 708 F.3d at 569 ("[T]he relevant inquiry to determine whether to apply the professional speech doctrine is whether the speaker is providing personalized advice in a private setting to a paying client or instead engages in public discussion and commentary. Professional speech analysis applies in the former context . . . but not in the latter." (internal citations omitted)); *Locke*, 634 F.3d at 1191 ("There is a difference, for First Amendment purposes, between regulating professionals' speech to the public at large versus their direct, personalized speech with clients. . . . [Because] Florida's license requirement regulates solely the latter. . . . it does not implicate constitutionally protected activity under the First Amendment." (internal citations omitted)).

In his motion for summary judgment, Gonzalez acknowledged that the professional speech doctrine could apply to his challenge to Law 96, but he did not make any argument as to whether the law was regulating speech where there was a personal nexus between the professional and client or speech by a professional to a client. *See* Docket No. 86 at 13–14 (addressing the fact that the context of professional speech matters but failing to make any arguments regarding what context applies in this case). Furthermore, the Commonwealth, while also arguing that the professional speech doctrine applies, failed to acknowledge the distinction let alone present an argument. *See* Docket No. 120 at 17–20. With no argument presented from either side on this threshold question, summary judgment is inappropriate on the validity of Law 96 as a form of professional speech as it is not the province of the court to create arguments for the parties. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones. . . . Judges are not expected to be mindreaders." (internal quotations omitted)). Moreover, it is unnecessary to do so here, since Law 96 passes muster under the commercial speech doctrine.

When applying the First Amendment, there is a distinction between purely commercial speech, "which occurs in an area traditionally subject to governmental regulation, and other

varieties of speech." *Ohralik*, 436 U.S. at 456. This distinction matters because commercial speech, though not wholly outside the First Amendment's reach, is "entitled to lesser protection than other constitutionally guaranteed expression." *City of Cincinnati v. Discovery Network, Inc.*, 507 U.S. 410, 422 (1993); *Ohralik*, 436 U.S. at 456 ("[W]e . . . have afforded commercial speech a limited measure of protection, commensurate with its subordinate position in the scale of First Amendment values, while allowing modes of regulation that might be impermissible in the realm of noncommercial expression.").

Commercial speech is defined as "expression related solely to the economic interests of the speaker and its audience." *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n*, 447 U.S. 557, 561 (1980). Courts analyze commercial speech through the "default . . . four-part intermediate-scrutiny approach first promulgated in *Central Hudson*." *Mass. Ass'n of Private Career Sch. v. Healey*, 159 F. Supp. 3d 173, 189–90 (D. Mass. 2016) (citing *Cent. Hudson*, 47 U.S. at 563); *see Rocket Learning, Inc. v. Rivera-Sanchez*, 715 F.3d 1, 13 (1st Cir. 2013) (*Central Hudson* formulation is the definition of and test for commercial speech). And, unlike professional speech, the commercial speech doctrine has been clearly adopted by the First Circuit and is therefore the preferable way to analyze Law 96. *See Rocket Learning, Inc.*, 715 F.3d at 13.

Here, Law 96 regulates commercial speech. It states, in part:

> Nothing in this chapter shall be interpreted as an attempt to prevent that members of other professions, who are duly licensed by the laws of Puerto Rico, nor persons who are duly qualified through their training and/or experience, may render services consistent with their license or area of their qualifications, provided they do not introduce themselves before the public with the title of psychologist, or describe their work in terms that suggest training, experience or competence in psychology.

20 L.P.R.A. § 3202(f). Courts have been clear that professional titles, such as psychologist, qualify as commercial speech. *See Serafine*, 810 F.3d at 360 n. 10 (5th Cir. 2016) (listing cases). Gozalez, as a professional, uses a title to inform the public of the services he is qualified to provide. Similarly, the public relies on job titles like lawyer, doctor, certified public accountant, and psychologist to identify people who offer a particular service and who have been certified by the

state through licensing to have the requisite skills to complete that service. Law 96 also restricts non-licensed psychologists from practicing the profession of psychology by implicitly holding themselves out to the public as a psychologist through the way that they describe their work. *See* 20 L.P.R.A. § 3202(f); § 3203. Because a title is merely shorthand for a description of a person's work, it is only logical that a long-form description would be commercial speech in the same way that a title is commercial speech. As Law 96 regulates how non-licensed psychologists describe their work to the public, whether in detail or merely through a title, it inhibits only speech that is "solely in the individual interest of the speaker and its specific business audience." *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 762 (1985)

*Central Hudson* dictates that courts subject commercial speech regulations, such as Law 96, to intermediate scrutiny to determine whether they pass constitutional muster. Gonzalez, however, argues that heightened scrutiny is required by the Court's more recent decision in *Sorrell v. IMS Health, Inc.,* 564 U.S. 552 (2011). *See* Docket No. 86 at 9. Specifically, Gonzalez states that *Sorrell* mandates that this court apply heightened scrutiny in assessing Law 96 because Law 96 is a content-based restriction on commercial speech where the effect on the restriction on speech is more than incidental. *See* Docket No. 86 at 9; *Sorrell*, 564 U.S. at 567 (striking down a law that prevented Vermont pharmacies from sharing prescriber-identifying information for marketing purposes).

Under *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015), Law 96 is certainly a content-based restriction. A law is content-based "on its face" if it "applies to particular speech because of the topic discussed or the idea or message expressed." *Id.* at 2227. A law "targeted at specific subject matter is content-based even if it does not discriminate among viewpoints within that subject matter." *Id.* at 2230. Here, Law 96 is clearly content-based under the *Reed* test because it prohibits anyone who has "not been authorized by the Board of Examiners of Psychologists" from practicing "the profession of psychologist in Puerto Rico," explaining that unlicensed psychologists may not "introduce themselves before the public with the title of psychologist, or describe their work in terms that suggest training, experience or competence in psychology." 20

L.P.R.A. § 3202(f); § 3203. On its face, it differentiates between speech that describes the speaker as practicing psychology and speech that does not. *Compare McLaughlin v. City of Lowell*, 140 F. Supp. 3d 177, 185 (D. Mass. 2015) (ordinance was content-based when "[o]n its face, the Ordinance distinguishes solicitations for immediate donations from all others. . . . The City's definition of panhandling targets a particular form of expressive speech—the solicitation of immediate charitable donations—[and] applies its regulatory scheme only to that subject matter"), *with Petrello v. City of Manchester*, No. 16-CV-008-LM, 2017 WL 3972477, at *10–11 (D.N.H. Sept. 7, 2017) (city police's policy was likely not content-based when it called on officers to issue a summons solely based on "whether the presence of a panhandler causes an obstruction of traffic at an intersection" and the offers did not "consider[] the message being conveyed").

However, while Law 96 is content-based, it does not follow that it is subject to heightened scrutiny or that the four-factor test in *Central Hudson* does not apply. As our sister court explained when analyzing a similar public safety-related commercial speech regulation, *Sorrell* is still "consistent with the well-established principle that the applicable level of scrutiny for commercial-speech regulations depends on the specific 'nature both of the expression and of the government interests served by its regulation.'" *Mass. Ass'n of Private Career Sch.*, 159 F. Supp. 3d at 190–91 (quoting *Central Hudson*, 447 U.S. at 563). In *Massachusetts Association of Private Career Schools*, the court distinguishes *Sorrell* on several fronts to prove that "the Supreme Court would not categorically apply strict scrutiny to content-based commercial-speech regulations that are justified on consumer-protection grounds." 159 F. Supp. 3d at 191 (pointing out that the *Sorrell* court explained that a state may selectively regulate advertising in different industries based on risk of fraud; "explicitly acknowledged its holding's limited effect on regulations justified by alleged consumer deception[;]" and analogized its holding to a declaration that prohibiting truthful, nonmisleading advertisements is an unconstitutional way for a state to seek to eliminate a product it dislikes). Unlike in *Sorrell* where the state justified its actions based on medical privacy and generally improving public health, here, and in *Massachusetts Association of Private Career Schools*, the government justifies its law "based on the government's interest in protecting

consumers from misleading commercial speech." *Id*.; *see* Docket No. 120 ("The main purpose of [Law 96] is to establish professional quality controls to guarantee better psychological services to citizens" because "situations in which people . . . practice psychology without authorization" can cause citizens to suffer "serious harm.").

Accordingly, *Sorrell* does not override the basic premise that the First Amendment does not protect misleading commercial speech when it is "inherently likely to deceive or where the record indicates that a particular form or method of advertising has in fact been deceptive[.]" *In re R.M.J.*, 455 U.S. 191, 202–03 (1982); *see Friedman v. Rogers*, 440 U.S. 1, 9–10 (1979) ("Untruthful speech, commercial or otherwise, has never been protected for its own sake."). Therefore, the most important question in determining what level of scrutiny the court should apply is whether Law 96 simply prohibits false, misleading, or unlawful speech. *See First Resort, Inc. v. Herrera*, 860 F.3d 1263, 1271 (9th Cir. 2017) ("[W]e must first determine whether the Ordinance only regulates false or misleading commercial speech. This question lies at the heart of the dispute, because while commercial speech is generally subject to intermediate scrutiny, the Constitution affords no protection to false or misleading commercial speech."). This is also the first factor of the *Central Hudson* test. *See Cent. Hudson,* 447 U.S. at 566 ("At the outset, we must determine whether the expression is protected by the First Amendment. For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading."). As the Fifth Circuit explained in *Joe Conte Toyota, Inc. v. Louisiana Motor Vehicle Commission*, "a statement is 'actually' misleading when the record contains evidence that recipients of commercial speech 'actually ha[ve] been misled by the statement'" whereas a statement is "'inherently' misleading when, notwithstanding a lack of evidence of actual deception in the record, 'the particular method by which the information is imparted to consumers is inherently conducive to deception and coercion.'" 24 F.3d 754, 756 (5th Cir. 1994) (quoting *Peel v. Attorney Disciplinary Commission*, 496 U.S. 91, 112 (1990) (Marshall, J. and Brennan, J., concurring)). If, however, the speech being regulated is only "potentially misleading" and may also be "presented

in a way that is not deceptive" then the regulation must also pass the other three factors of the *Central Hudson* test. *Am. Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1107 (9th Cir. 2004).

The Commonwealth argues that this court should follow the factual findings of the Puerto Rico Court of Appeals and find that Gonzalez's statements were actually misleading and inherently misleading. *See* Docket No. 120 at 14–15. In its opinion, the Puerto Rico Court of Appeals stated that Gonzalez's actions misled both the Board of Examiners of Psychology and Páez. *See* Appellate Decision at 30. The Board of Examiners of Psychology did not learn that "Mr. Gonzalez had provided false information and that [he] did not have a license as a psychologist or as a physician" until after they evaluated Páez's claim. *Id*. More importantly, though, the court found that Páez was misled by Gonzalez's misrepresentations:

> Mr. Páez requested the services of the appellant in his capacity as a psychologist, and paid the agreed-upon price of $4,000 for the same. However, Mr. Páez was the victim of the illegal practice by the appellant when he introduced himself as a psychologist without having the corresponding license. When Mr. Páez agreed to make the payment to the appellant he did so under the impression that he was making the payment to a psychologist for his services. . . . If Mr. Páez had known that the appellant was not a psychologist, he would not have requested his services nor would he have paid said amount.

*Id*. at 30–31. Given that the state court's finding of fact "shall be presumed to be correct," Gonzalez bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1). Gonzalez has not met his burden. It is uncontested that Páez was seeking out a forensic psychologist when he found Gonzalez through a half-page advertisement in a newspaper that stated that Gonzalez was a forensic psychologist; furthermore, when Páez called Gonzalez to ask about his services, Gonzalez stated that he was a forensic psychologist. SUF ¶ 6; RSF ¶ 6. As Gonzalez was not licensed to practice the profession of psychology, his statements to the contrary were actually misleading to the extent that Páez paid Gonzalez $4,000 under the false belief that Gonzalez was a licensed psychologist.

Moreover, Law 96 regulates inherently misleading speech because it prohibits unlicensed individuals from representing themselves as such to the public. *See Joe Conte Toyota, Inc.* 24 F.3d at 756 (commercial speech is inherently misleading when "the particular method by which the

information is imparted to consumers is inherently conducive to deception and coercion" (internal quotations omitted)). Law 96 prohibits those who have not "been authorized by the Board of Examiners of Psychologists" from practicing "the profession of psychology." 20 L.P.R.A. § 3203. This prohibition is "consistent with their license or area of their qualifications, provided they do not introduce themselves before the public with the title of psychologist, or describe their work in terms that suggest training, experience or competence in psychology." 20 L.P.R.A. § 3202(f). According to the plain language of the statute it prohibits 1) anyone from practicing the profession of psychology without a license to do so, and 2) anyone from holding themselves out to the public as someone qualified to practice psychology even if the work for which they are duly qualified overlaps with the work of psychologists. Gonzalez is not challenging the Commonwealth's ability to regulate and license professions. Docket No. 86 at 12; *see Ohralik*, 436 U.S. 447, 460 (1978) ("In addition to its general interest in protecting consumers and regulating commercial transactions, the State bears a special responsibility for maintaining standards among members of the licensed professions."). Therefore, if, as Gonzalez concedes, it is valid for the Commonwealth to require psychologists to be licensed before they can practice, then the public would reasonably rely on the fact that anyone practicing psychology has been vetted and licensed by the state as qualified to do so. In fact, in the case at hand, Páez did just that, falsely believing that he was paying for the expert report of someone who was licensed to practice psychology because Gonzalez continually held himself out as such. Law 96 is a prohibition on inherently misleading speech because it seeks to protect the public from those who would fraudulently claim to be authorized by the state to practice psychology. *See Liberty Coins, LLC v. Goodman*, 748 F.3d 682, 693 (6th Cir. 2014) (explaining that a Vermont statute that prohibited an unlicensed real estate broker from advertising properties as a real estate agent was valid because the unlicensed broker was "not being restrained from publishing advertisements; he [was] being restrained from publishing misleading statements about his own status as a broker." (internal quotations omitted)); *Accountant's Soc. of Va.*, 860 F.2d at 606 ("The ban on the use of 'public accountant' or 'PA' by

unlicensed accountants . . . is a constitutionally permissible regulation of misleading commercial speech.").

Gonzalez argues that because he fits the statutory definition of a psychologist under Law 96, it is unconstitutional for the Commonwealth to prohibit him from calling himself a psychologist to the public. *See* Docket No. 86 at 7. Whether or not he is a psychologist under the statutory definition, and the facts do demonstrate that he is, it does not change the fact that the Commonwealth has lawfully prohibited individuals from *practicing* psychology without a license. SUF ¶¶ 16, 44. Given that prohibition, it is inherently misleading for Gonzalez to hold himself out to the public as a practicing psychologist because he may not in fact lawfully practice psychology. The Commonwealth's criminalization of the unlicensed practice of psychology, and resulting prohibition on individuals advertising their supposed membership in a profession for which they are unlicensed, is very different from situations in which the courts have found that a prohibition on advertising is unconstitutional because those only involved a prohibition on advertising and not on practicing the profession itself. *See Byrum v. Landreth*, 566 F.3d 442, 449 (5th Cir. 2009) (regulation prohibiting certain forms of interior design advertising by unlicensed individuals was unconstitutional when those individuals were still legally entitled to engage in interior design); *Abramson v. Gonzalez*, 949 F.2d 1567, 1570–71 (11th Cir. 1992) (Florida law was unconstitutional when no laws prevented "anyone from practicing psychology or one of the allied fields, but a person not licensed under either Chapter 490 or 491 [was] prohibited from holding himself or herself out by any title or description incorporating" certain words such as psychologist, psychology, and psychological"). Because of the Commonwealth's licensing scheme, Gonzalez does not have a First Amendment right to call himself a psychologist as such advertisements would be inherently misleading. *See Nat'l Ass'n for the Advancement of Psychoanalysis*, 228 F.3d at 1056 n. 10 ("Plaintiffs concede that, if the licensing scheme is otherwise valid, they have no viable commercial speech claim for the right to use professional titles, such as 'psychoanalyst' and 'analytical psychologist.'"); *Edwards v. D.C.*, 765 F. Supp. 2d 3, 13 n. 8 (D.D.C. 2011) (conclusion that "the underlying licensing requirements are valid" rendered moot plaintiffs' arguments that the

regulation prohibiting "anyone other than a licensed sightseeing company or tour guide from advertising its services using the words " 'sightseeing,' 'tours,' 'guide,' or any combination of these words" was unconstitutional).

The court should find that Law 96 prohibits expression that is actually misleading or inherently misleading. Because the First Amendment does not protect actually or inherently misleading commercial speech, there is no need to reach the other prongs of the *Central Hudson* test. *See El Dia, Inc. v. Puerto Rico Dep't of Consumer Affairs*, 413 F.3d 110, 113 (1st Cir. 2005) ("[W]hen commercial speech is entitled to First Amendment protection—that is, when it concerns lawful activity *and is not misleading*—it can only be limited if the restriction (1) is in support of a substantial government interest, (2) "directly advances the governmental interest asserted," and (3) "is not more extensive than is necessary to serve that interest." (emphasis added) (quoting *Central Hudson*, 447 U.S. at 566)); *Mass. Ass'n of Private Career Sch.*, 159 F. Supp. 3d at 190 ("[A] court must first determine whether the commercial speech is actually false, deceptive, or misleading, or whether it proposes an unlawful activity. . . . [I]f a court finds in the affirmative on the first prong, the analysis ends and the speech is not entitled to any First Amendment protection.").

In addition to his as applied challenge to Law 96, Gonzalez also alleges that Law 96 is facially unconstitutional because it is void for vagueness. Docket No. 86 at 20. A statute violates due process by being void for vagueness when its "prohibitions are not clearly defined." *Grayned v. City of Rockford,* 408 U.S. 104, 108 (1972). If a statute "clearly implicates free speech rights, it will survive a facial challenge so long as it is clear what the statute proscribes in the vast majority of its intended applications." *Humanitarian Law Project v. U.S. Treasury Dep't*, 578 F.3d 1133, 1146 (9th Cir. 2009). Conversely, if the statute does not implicate free speech rights then it is only unconstitutional if it is "impermissibly vague in all its applications." *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982).

"[T]he Constitution of the United States mandates that . . . the conduct for which [a criminal defendant] is held accountable be prohibited with sufficient specificity to forewarn of the

proscription of said conduct." *United States v. Anzalone*, 766 F.2d 676, 678 (1st Cir. 1985). While a defendant will typically be "deemed to have fair notice of an offense if a reasonable person of ordinary intelligence would understand that his or her conduct is prohibited by the law in question" there is an exception when "the statutory prohibition involves conduct of a select group of persons having specialized knowledge, and the challenged phraseology is indigenous to the idiom of that class." *Pickup v. Brown*, 740 F.3d 1208, 1233 (9th Cir. 2014) (internal quotations omitted). In those cases, "the standard is lowered and a court may uphold a statute which uses words or phrases having a technical or other special meaning, well enough known to enable those within its reach to correctly apply them." *Id.* at 1233–34 (internal quotations omitted).

Gonzalez argues that Law 96 is unconstitutionally vague because it prohibits members of other professions from "describ[ing] their work in terms that suggest training, experience or competence in psychology." 20 L.P.R.A. § 3202(f). Gonzalez argues that the prohibition lacks clarity and that if given clarity through an interpretation that professionals may not use words with the root of "psych-" (such as psychology or psychological or psychologist), then the prohibition becomes unconstitutionally broad because those are common terms. See Docket No. 86 at 24. However, such a blunt-force reading of Law 96 is not necessary to understand what it prohibits.

Although Gonzalez analyzes Law 96 through the more rigorous test applied to statutes that implicate protected First Amendment speech, as discussed above the type of speech regulated by Law 96—misleading commercial speech—is not protected by the First Amendment. Consequently, to pass muster, Law 96 must not be impermissibly vague in all its applications. And, more specifically, Gonzalez may only challenge the constitutionality of Law 96 as it applies to him because a facial challenge for vagueness is only permissible for statutes that impinge the First Amendment. *See Chapman v. United States*, 500 U.S. 453, 467 (1991) ("First Amendment freedoms are not infringed by [the statute], so the vagueness claim must be evaluated as the statute is applied to the facts of this case."); *Village of Hoffman Estates*, 455 U.S. at 495 n. 7 (1982) ("Vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand." (internal quotation and citations omitted)).

The question here then is whether the prohibitions of Law 96 clearly apply to Gonzalez's actions such that its language gave him fair notice of his offenses. Gonzalez told Páez, through his advertisement, his business card, and over the phone, that Gonzalez was a forensic psychologist; SUF ¶¶ 6, 13; RSF ¶¶ 6, 13. Gonzalez then titled the report that he prepared for Páez, "Psychological Expert Report, Applied Psychology Division Program for Early Intervention." SUF ¶ 9. On the last page of the report, Gonzalez listed his title as Clinical Psychological Counselor with license number 2294 along with several other titles. SUF ¶¶ 9, 27, 32. At that time, the title of Clinical Psychological Counselor did not exist. RSF ¶ 27.

From these facts, it is clear that Law 96 prohibited Gonzalez's actions. He clearly and repeatedly introduced himself to the public as a psychologist, which is expressly prohibited by Law 96. *See* 20 L.P.R.A. § 3202(f) (non-licensed psychologists may not "introduce themselves before the public with the title of psychologist"). Moreover, he also indubitably described his work in terms that suggested experience and competence in psychology with the intention of convincing Páez that he was authorized to practice psychology: he titled his report as an expert psychological report developed by the "Applied Psychology Division" of his office, gave himself the nonexistent title of "Clinical Psychological Counselor," and listed a license number that belonged to someone else. SUF ¶¶ 9, 27, 32; RSF ¶ 27; Appellate Decision at 30–31; *see* Appellate Decision at 7 ("[T]he last page [of the report] contained his name along with several degrees. . . . [including] 'medical clinical consultant,' 'hypnotherapist,' 'traumatologist,' and 'clinical psychology counselor'. As to those degrees, Dr. Medina stated that some of them do not even exist, such as the 'clinical consultant physician' degree."). Gonzalez also conspicuously did not list his actual title of licensed professional counselor on the report. SUF ¶ 16; *see* Appellate Decision at 7 ("None of the degrees appearing in his report included the 'professional counselor' degree, which is the official degree for which he has a license."). When considered together, the undisputed facts of the case show that, as applied to Gonzalez, Law 96 is constitutional; there is no question that his actions fall within its prohibition against misleading commercial speech by unlicensed individuals who hold themselves out to the public as qualified to practice psychology. As Law 96 is not vague as applied

to Gonzalez, the court should dismiss his void for vagueness challenge.[3] *See Holder v. Humanitarian Law Project*, 561 U.S. 1, 21 (2010) ("[W]hile the scope of the material-support statute may not be clear in every application . . . the dispositive point here is that . . . the statutory terms are not vague as applied to plaintiffs."); *Parker v. Levy*, 417 U.S. 733, 756 (1974) ("One to whose conduct a statute clearly applies may not successfully challenge it for vagueness.").

## CONCLUSION

There is no genuine dispute of material fact that Gonzalez was not convicted under Law 96 in violation of the First Amendment or the Due Process Clause of the Fifth Amendment. For the foregoing reasons, the Commonwealth's motion for summary judgment should be **GRANTED**, and the court should **DISMISS** Gonzalez's petition for a writ of habeas corpus.

This report and recommendation is filed pursuant to 28 U.S.C. § 636(b)(1)(B) and Rule 72(d) of the Local Rules of this Court. Any objections to the same must be specific and must be filed with the Clerk of Court **within fourteen days** of its receipt. Failure to file timely and specific objections to the report and recommendation is a waiver of the right to appellate review. *See Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Davet v. Maccorone*, 973 F.2d 22, 30–31 (1st Cir. 1992); *Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985 (1st Cir. 1988); *Borden v. Sec'y of Health & Human Servs.*, 836 F.2d 4, 6 (1st Cir. 1987).

**IT IS SO RECOMMENDED.**
In San Juan, Puerto Rico, this 16th day of May 2018.

*S/Bruce J. McGiverin*
BRUCE J. McGIVERIN
United States Magistrate Judge

---

[3] The Commonwealth did not respond to Gonzalez's vagueness arguments. Nonetheless, the First Circuit has approved the district court's authority to do so where discovery is "'sufficiently advanced' to afford the parties 'a reasonable opportunity to glean the material facts'; and second, the 'targeted party' must have been given 'notice and a chance to present its evidence on the essential elements of the claim or defense.'" *Oahn Nguyen Chung v. StudentCity.com, Inc.*, 854 F.3d 97, 103 (1st Cir. 2017). Here, neither concern is at issue as there has been no discovery and Gonzalez, having raised the issue of void for vagueness, had a chance to present his arguments.